UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NACIMO A., <br><br>　　　　　　　　　　Plaintiff, <br><br>v. <br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br>　　　　　　　　　　Defendant. | Case No.: 20-cv-1780-KSC <br><br> **ORDER ON JOINT MOTION FOR JUDICIAL REVIEW** <br><br> **[Doc. No. 20]** |

On September 10, 2020, plaintiff Nacimo A. ("plaintiff") filed a complaint under 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the Commissioner of the Social Security Administration's[1] ("defendant" or the "Commissioner") denial of disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"). Doc. No. 1. Before the Court is the parties' Joint Motion for Judicial Review of the Commissioner's final decision (the "Joint Motion" or "Jt. Mot."). Doc. No. 20. The parties have consented to have the matter heard and resolved by a Magistrate Judge. Doc. No. 5. Having considered the papers, the Certified Administrative

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted for Andrew M. Saul. *See* Fed. R. Civ. P. 25(d).

Record ("AR"), and the applicable law, the Court hereby **AFFIRMS** the Administrative Law Judge's ("ALJ") decision.

## I.   BACKGROUND

In December 2014, plaintiff filed applications for period of disability and disability insurance benefits and supplemental security income under Titles II and XVI of the Act, alleging a disability onset date of January 1, 2009. AR at 315-27.[2] The Social Security Administration denied plaintiff's claims initially and upon reconsideration. *Id.* at 198-99. Plaintiff requested a hearing before an ALJ, and such hearing was held on May 30, 2017. *Id.* at 67-90. On October 17, 2017, an ALJ issued a decision denying plaintiff's claim. *Id.* at 156-68. On September 11, 2018, after a timely appeal, the Appeals Council vacated the ALJ's decision and remanded for further proceedings. *Id.* at 174-79. The Appeals Council directed further consideration of plaintiff's residual functional capacity ("RFC"), in part, due to new evidence of back, neck, and shoulder impairments. *Id.* at 176-77.

On November 26, 2019, pursuant to the order of remand, a supplemental hearing was held in San Diego, California, before a different ALJ. *Id.* at 37-66. Plaintiff appeared with counsel and gave testimony, as did a vocational expert. *Id.* After the hearing, the ALJ requested the opinion of a medical expert, Steven Saul Goldstein, M.D., who reviewed plaintiff's entire medical record and provided responses to interrogatories. *See* AR at 3192-217.

On February 13, 2020, the ALJ issued a written decision finding plaintiff was not disabled as defined in the Act from January 1, 2009 through the date last insured. *Id.* at 15-27. On July 22, 2020, the Appeals Council denied review of the ALJ's decision, which then became the final decision of the Commissioner pursuant to 42 U.S.C. § 405(h). *Id.* at 1-6. This action followed.

///

---

[2] The Court adopts the parties' pagination of the AR. All other citations are to the page numbers assigned by the Court's CM/ECF system.

## II. SUMMARY OF ALJ'S FINDINGS

After determining that plaintiff met the insured status requirements of the Act through December 31, 2013 (*see* AR at 18), the ALJ followed the five-step sequential evaluation process to determine whether plaintiff is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since her alleged onset date of January 1, 2009. *Id.* at 18.

At step two, the ALJ found plaintiff suffered from the following severe impairments: rotator cuff tendonosis; chronic obstructive pulmonary disorder ("COPD"); fibromyalgia; systemic lupus erythematosus ("SLE"); degenerative disc disease of the lumbar and cervical spines; migraine headaches; and hypertension. *Id.* The ALJ also noted plaintiff's other impairments but found them non-severe: shortness of breath and fatigue with high blood pressure; pacemaker installation in April 2019; cataracts; and Grade I hypertensive retinopathy. *Id.* Additionally, the ALJ found plaintiff's medically determinable impairments of depression and anxiety as nonsevere because they caused no more than minimal limitation in her ability to perform basic mental work activities. *Id.* at 18-19.

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR at 20.

Next, the ALJ determined that plaintiff had the RFC to perform light work except that she had the following additional limitations:

> [S]he can sit for 6 hours in an 8-hour day; she can stand and walk for 6 hours in an 8-hour day; she can occasionally lift 20 pounds and frequently lift 10 pounds; she can occasionally reach, handle, and finger bilaterally; she can occasionally climb stairs but can never climb ladders, scaffolds, or ropes; she can occasionally balance, stoop, kneel, crouch, and crawl; and she should have no concentrated exposure to unprotected heights, pulmonary irritants, to include dusts, fumes, gases, vibration, noise, dangerous or fast moving machinery, or temperature extremes.

*Id.* at 21.

///

In making this assessment, the ALJ found plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." *Id.* The ALJ cited to findings and impressions from various diagnostic imaging reports, plaintiff's treatment, and normal examinations to discount plaintiff's subjective allegations of impairment. *Id.* at 22-23.

The ALJ's RFC assessment is generally consistent with that of the medical expert, Dr. Goldstein, who submitted a December 14, 2019 medical source statement. AR at 24-25 (citing *id.* at 3206-17 (Ex. 64F)). Notably, Dr. Goldstein's RFC assessment found plaintiff capable of performing *more* postural activities and manipulative movements in the right and left upper extremities than the ALJ's final RFC assessment. *Compare* AR at 21 *with id.* at 3208-09. The ALJ assigned significant weight to this opinion, reasoning that Dr. Goldstein had the most recent record review and supported his findings with citations to the medical evidence of record. *Id.* at 25.

The ALJ also acknowledged the opinions of state medical consultants, M. Weeks, M.D. and B. Rudnick, M.D., who recommended light work with some limitations. *Id.* at 24 (citing *id.* at 91-102 (Ex. 1A) and 117-133 (Ex. 5A)). The ALJ assigned limited weight to these opinions, as such opinions were issued before the October 2017 ALJ decision, and the post-remand medical evidence of record warranted additional limitations. *Id.* at 24.

Plaintiff's treating physician, Mohammed K. Elsayed, M.D., completed a physical RFC questionnaire in May 2017 and a medical source statement in September 2019. AR at 1260-64 and 2717-19. Dr. Elsayed found plaintiff capable of only low-stress jobs and opined she would miss more than four days of work each month due to her impairments. *See id*. He stated that plaintiff suffers from "serious medical conditions that might impair [her] ability to perform any kind of work . . ." *Id.* at 2719. The ALJ observed that the limitations recommended by Dr. Elsayed did not support work at the sedentary level. *See id*. at 24. Further, in giving little weight to these opinions, the ALJ stated:

> In choosing to represent . . . [plaintiff] in the most disabled light as possible, Dr. Elsayed's opinion overstates . . . [plaintiff's] limitations. Specifically, the

>demonstrated severity of . . . [plaintiff's] medical problems as reflected in the physical examination records and the MRI reports do not suggest that the claimant must be prone for half of the day. Likewise, Dr. Elsayed's personal clinical notes do not validate the severity of his assessed limitations, insofar as he noted the claimant's absence of weakness and generally improved or stable physical condition. Based on the discrepancy between the objective records and the severity of Dr. Elsayed's assessed limitations, the undersigned gives little weight to him.

AR at 24.

The ALJ also assigned limited weight to a physical capacity assessment performed in connection with an application for State benefits which limited plaintiff to sedentary work. *Id.* (citing *id.* at 947-949 (Ex. 15F)). The ALJ found the assessment unsupported due to the "lack of serious findings documented in . . . [plaintiff's] numerous MRI scans" and plaintiff's stable condition. *Id*.

The ALJ reviewed a June 2015 Third-Party Function Report from plaintiff's daughter. AR at 24-25. The report described plaintiff's chronic pain and fatigue. *Id.* at 25 (citing *id.* at 420-28 (Ex. 6E)). The ALJ assigned limited weight to this report, finding the evidence of record did support the severity of the pain report and plaintiff's fatigue was only consistent with lupus flare-ups which could be accommodated by a light work restriction. *Id.* at 24-25.

At step four, the ALJ analyzed the evidence in the record and found plaintiff unable to perform past relevant work as a sales clerk, assembler, and parking lot attendant. *Id.* at 25. In making this determination, the ALJ considered the vocational expert's testimony that past relevant work would be precluded due to plaintiff's limitations in reaching. *Id.* at 25-26.

At step five, after considering plaintiff's age, education, work experience and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform. AR at 26-27. Pursuant to the vocational expert's testimony, this includes light unskilled occupations such as usher, furniture rental consultant, and a children's attendant. *Id.* at 26. Because the ALJ found plaintiff capable of a successful adjustment to other work that exists in significant numbers in the national economy, the

ALJ determined plaintiff was not disabled under the Act at any time from the alleged onset date through the date of the decision. *Id.* at 37; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g).

### III. ISSUE IN DISPUTE

The parties present a single issue for the Court's review: Whether the ALJ properly considered the opinion of plaintiff's treating physician. Jt. Mot. at 4.

### IV. STANDARD OF REVIEW

The Act provides for judicial review of a final agency decision denying a claim for disability benefits in federal district court. 42 U.S.C. § 405(g). "[F]ederal court review of social security determinations is limited." *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A federal court will uphold the Commissioner's disability determination if it is free of legal error and is supported by substantial evidence. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citing *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation omitted). In reviewing whether the ALJ's decision is supported by substantial evidence, the Court must consider the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion . . .." *Id.* (quoting *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Garrison*, 759 F.3d at 1010 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). When evidence supports more than one rational interpretation, the ALJ's conclusion must be upheld. *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Stated differently, when "the evidence can reasonably support either affirming or reversing a decision, [the court] may not

///

substitute [its] judgment for that of the [ALJ]." *Garrison*, 759 F.3d at 1010 (citation omitted) (third alteration in original).

## V. DISCUSSION

Plaintiff contends the ALJ impermissibly rejected Dr. Elsayed's treating physician opinion by failing to provide specific and legitimate reasons supported by substantial evidence. Doc. No. 20 at 5-11. She argues that the ALJ incorrectly concluded that Dr. Elsayed overstated plaintiff's limitations, improperly extrapolated MRI reports to assess functional limitations, and merely copied the previous ALJ's assessment of Dr. Elsayed's opinion. *Id*. Plaintiff asks the Court to credit Dr. Elsayed's opinion as true and remand this case for the payment of benefits. *Id.* at 10-11. Defendant counters that the ALJ properly discounted Dr. Elsayed's opinion because it was unsupported by the medical evidence, it failed to consider that plaintiff's impairments were controlled with treatment, and it contradicted Dr. Goldstein's expert opinion. *Id.* at 12-15.

An ALJ must consider all evidence, including medical opinions, in determining whether the claimant is disabled. *See* 20 C.F.R. § 416.920(a)(3). In this case, under the then-existing regulatory framework, the ALJ's treatment of the medical opinions in the record depended upon whether the opinions were proffered by treating, examining, or non-examining physicians.[3] That framework provided that the opinions of treating physicians, who were presumed to have "the most significant clinical relationship with the claimant[,] [were] generally entitled to more weight than those with lesser relationships." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (noting that "[b]y rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians") (citing 20 C.F.R. § 404.1527). To discredit a treating provider's opinion, the ALJ must give "specific and legitimate reasons for doing so that are supported by substantial evidence."

---

[3] The regulations no longer require special consideration of a treating physician's opinion. However, because plaintiff's claim for benefits was filed before March 27, 2017, the previous regulatory framework applies. *See* 20 C.F.R. §§ 404.1520c and 404.1527.

*Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020) (citation omitted). "'The ALJ [could] meet [this] burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Magellanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). Failure to do so is legal error. *See Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996); *accord Garrison*, 759 F.3d at 1012-13 ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.").

Although afforded relatively greater weight than the opinion of an examining or non-examining physician, however, a treating provider's opinion is "'not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.'" *Batson*, 359 F.3d at 1195 (citation omitted). Notably, the ALJ is not required to accept any opinion "at face value" and may properly reject an "opinion [that] is brief, conclusory and inadequately supported by clinical findings." *Ford*, 950 F.3d 1141, 1155 (9th Cir. 2020) (citation omitted).

Regardless of source, in evaluating a medical opinion the ALJ should also consider "[a]dditional factors" set forth in the regulations, such as "the amount of relevant evidence that supports the opinion and the quality of the explanation provided," whether the medical opinion is consistent with the record as a whole, and the opining physician's specialty, awareness of "the Administration's 'disability programs and their evidentiary requirements," and familiarity with the case record. *See Orn*, 495 F.3d at 631 (citation omitted); *see also* 20 C.F.R. § 404.1527(c).

Initially, plaintiff correctly notes that the ALJ's assessment of Dr. Elsayed's opinion largely mirrors that of the prior 2017 ALJ decision. *Compare* AR at 24 *with id.* at 165. However, there is one exception: the ALJ also discussed Dr. Elsayed's September 2019 medical source statement. *See* AR at 24 (citing *id.* at 2716-19). Dr. Elsayed's 2019 opinion addressed impairments that were found to be "severe" after the 2017 decision, including

SLE. *See id.* at 2716-19. It also addressed the placement of a pacemaker in April 2019. *Id.* Plaintiff is therefore incorrect that the ALJ's evaluation of Dr. Elsayed's opinion "is merely a reiteration of the prior [ALJ's] reasoning . . . [and] fails to take into impairments [sic] that became crystallized after 2017." Jt. Mot. at 9.

Given that the ALJ's decision addresses post-remand evidence, the Court will proceed to review the reasons cited by the ALJ in rejecting the physician's opinion to determine whether they constitute specific and legitimate reasons supported by substantial evidence. *See generally*, *Murphy v. Colvin*, No. 15-cv-222-BAM, 2016 WL 4577793, *10 (E.D. Cal. Sept. 2, 2016) (finding ALJ's credibility determination regarding plaintiff's subjective allegations of impairment supported by substantial evidence in record despite ALJ cutting and pasting statements from another decision regarding use of extremities). As discussed, the ALJ discounted Dr. Elsayed's opinion based upon a "discrepancy between the objective records and the severity of Dr. Elsayed's assessed limitations." AR at 24. The ALJ cited to physical examination records and MRI reports, which "[did] not suggest that plaintiff must be prone for half of the day." *Id.* Additionally, the ALJ found Dr. Elsayed's own clinical notes did not validate the severity of the assessed limitations, "insofar as he noted [plaintiff's] absence of weakness and generally improved or stable physical condition." *Id.* at 24.

Plaintiff contends that the ALJ is not qualified to interpret raw medical data from MRI reports to make a functional assessment. Doc. No. 8 at 21. It is true that "as a lay person, an ALJ is . . . not qualified to interpret raw medical data" to make a functional assessment, and that the ALJ's RFC must be supported by a "medical assessment." *See Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. Feb. 21, 2008) (internal quotations and citations omitted). That requirement is satisfied in this case. At the outset of the RFC assessment, the ALJ cited objective medical evidence that conflicted with Dr. Elsayed's opinion, including medical records which generally showed unremarkable, mild, and/or normal findings and examinations. *See* AR at 22-23. The ALJ also gave significant weight to the opinion of a medical expert, Dr. Goldstein, who reviewed plaintiff's entire medical

9

record and offered opinions as to plaintiff's postural activities and manipulative movements. *Id.* at 22-25. The ALJ gave Dr. Goldstein's opinion significant weight because it was consistent with the medical evidence of record. *Id.* at 24-25; *see Salee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (noting that "the findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings") (citation omitted). By identifying evidence that undermined Dr. Elsayed's disability opinion and describing how the evidence supported Dr. Goldstein's opinion and not Dr. Elsayed's opinion, the ALJ met his obligation to offer specific, legitimate reasons for rejecting Dr. Elsayed's opinion. *See Batson*, 359 F.3d at 1195 (affirming ALJ's decision giving minimal weight to treating physician's opinion, in part, because opinion not supported with objective evidence, it was contradicted by other evidence, and opinion based on plaintiff's subjective complaints); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (upholding ALJ's rejection of treating physician's opinion because it lacked objective evidence to support diagnoses). Accordingly, plaintiff is not entitled to remand on this ground.

## VI. CONCLUSION

For the reasons stated herein, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly, **IT IS HEREBY ORDERED** that the ALJ's decision is **AFFIRMED**. The Clerk of Court shall enter Judgment accordingly.

**IT IS SO ORDERED**.

Dated: May 10, 2022

Hon. Karen S. Crawford
United States Magistrate Judge